UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM SIM SPENCER,

        Plaintiff,        Case No. 1:10-cv-735

v.        Honorable Janet T. Neff

JAMES ATTERBERRY et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The action originally was filed in the Eastern District of Michigan and was transferred to this Court. Plaintiff has paid the full filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* second amended complaint[1] indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless

---

[1] Under Federal Rule of Civil Procedure 15(a)(1), "[a] party may amend its pleading once as a matter of course . . . before being served with a responsive pleading." Plaintiff filed a first amended complaint (docket #9) on September 22, 2010. Therefore, Plaintiff must seek leave of the Court or the opposing parties' written consent for any further amendments. Fed. R. Civ. P 15(a)(2). "The court should freely grant leave when justice so requires." *Id.* Because Plaintiff only seeks to add an equal protection claim in his second amended complaint (docket #13), this Court will grant Plaintiff's motion.

they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

## **Discussion**

### I.     Factual allegations

Plaintiff William Sim Spencer presently is incarcerated at the Pugsley Correctional Facility (MPF). In 2001, Plaintiff pleaded guilty in Oakland County Circuit Court to eight counts of second-degree criminal sexual conduct (person under 13 years old), MICH. COMP. LAWS § 750.520c(1)(A). In 2007, Plaintiff was resentenced to prison terms of 6 years and 8 months to 15 years for each count.[2] In his *pro se* second amended complaint, Plaintiff sues the following Defendants: Michigan Parole Board members James Atterberry, Miguel Berrios, Jodi DeAngelo, David Fountain, John Schlinker and David Klienhardt; Michigan Parole Board Chairperson Barbara Sampson; Michigan Department of Corrections (MDOC) Director Patricia Caruso; Michigan Governor Jennifer Granholm; MDOC parole and probation employee Michael Laskowski; MDOC employee Cynthia Patrick; Parnell Correctional Facility (SMT) employee Christine M. Reitzel; and Mid-Michigan Correctional Facility Resident Unit Manager I. Scott and Assistant Resident Unit Supervisor Barry Thompson; and MPF employee Brian Majerczyk.

Plaintiff's complaint does not concern his convictions or sentences. Rather, Plaintiff's complaint concerns his parole denials. Plaintiff contends that Defendants Caruso, Granholm and Sampson are jointly responsible for creating and implementing parole policies, including the requirement that sexual offenders must complete the MDOC Sexual Offender Therapy

---

[2]The Court obtained information regarding Plaintiff's convictions and sentences from the MDOC Offender Tracking Information System website at http://www.state.mi.us/mdoc/asp/otis2profile.asp?mdocNumber=384851.

(SOT) program. As part of the SOT program, a participant must admit full responsibility for his convictions.

Plaintiff denies that he committed any of the offenses for which he was convicted. Plaintiff alleges that he was coerced into pleading guilty because threats were made against his children. Because Plaintiff claims that he is innocent of the crimes for which he was convicted, he cannot enroll in the SOT program. Without completing the SOT program, Defendants will not release Plaintiff on parole.

According to the complaint, on December 13, 2001, Defendant Laskowski completed a Presentence Investigation Report that stated that Plaintiff "touched the victim on her chest and her vagina over her clothing." (Second Am. Compl., Page ID #204, docket #13.) The report further indicated that any touching by Plaintiff had been done "innocently." (*Id.*) Plaintiff claims that he made it clear that he did not touch the chest, vagina or any clothing covering those areas of the victim. Plaintiff also claims that the report falsely alleged that he had sexually penetrated the victim.

On August 30, 2007, Plaintiff attempted to enlist in the SOT program in order to qualify for parole. Defendant Reitzel was in charge of the program admissions. Plaintiff told Defendant Reitzel that he was innocent of the convictions. Defendant Reitzel ultimately denied Plaintiff admission to the SOT program because Plaintiff did not accept full responsibility for his crimes.

Plaintiff was denied parole in 2007, 2009 and 2010. On October 23, 2007, Defendants Scott and Thompson prepared Plaintiff's Parole Eligibility Report. Plaintiff complains that the report wrongly stated that he touched the victim's chest and vagina over her clothing and similarly assaulted three other victims. On October 25, 2007, Plaintiff's Parole Guidelines

Scoresheet indicated that he scored an average probability of parole. Nevertheless, Defendants Berrios and Schlinker denied Plaintiff's parole on November 9, 2007, and continued his next parole hearing for 24 months. Plaintiff complains that Defendants Berrios and Schlinker prepared a Case Summary Report, which falsely claimed that Plaintiff touched the victim several times on her chest and vagina over her clothing and that Plaintiff was on the waiting list for the SOT program. To support their decision to deny Plaintiff's parole, Defendants Berrios and Schlinker stated that Plaintiff denied his offenses.

On August 13, 2009, Defendant Patrick completed a COMPAS Narrative Assessment Summary, in which Plaintiff claims that Patrick falsely reported that Plaintiff was convicted of a sex offense "with force" and that Plaintiff "may have a fairly high-risk lifestyle and exhibit idleness, boredom, aimlessness and impulsive decision-making." (Second Am. Compl., Page ID #206.) Prior to his interview with the parole board, Plaintiff requested a psychological evaluation from Defendant Majerczyk. Plaintiff wanted to show the parole board that he was not a threat to the community. Defendant Majerczyk, however, denied Plaintiff's request. On August 18, 2009, Plaintiff received a Parole Guidelines Scoresheet, which indicated that Plaintiff scored an average probability of parole. On October 19, 2009, Defendants Atterbery and Fountain denied Plaintiff's parole, and continued his next parole hearing for 18 months.

Plaintiff argues that Defendants Atterberry and Fountain prepared a Case Summary Report, which falsely stated the following: (1) Plaintiff touched the twelve year-old victim several times on her chest and vagina over her clothing; (2) Plaintiff admitted committing the crimes; (3) Plaintiff said he was "sorry for his crime[s], but he did not penetrate[] the victims;" (4) Plaintiff was on the waiting list for the SOT program; (5) Plaintiff recognized a need to continue substance abuse

therapy after his release; (6) Plaintiff had a history of substance abuse and denied the problem; and (7) Plaintiff agreed with Defendants Atterberry and Fountain's refusal to parole him until he attended the SOT program. (Second Am. Compl., Page ID #207.) Plaintiff claims that Defendants Atterbery and Fountain's decision rested on a false statement that Plaintiff blamed his criminal history on substance abuse and immaturity.

On May 12, 2010, Plaintiff sent a kite to Defendant Majerczyk, requesting to be admitted into the SOT program while maintaining his innocence. Defendant Majerczyk denied Plaintiff's request to participate in the SOT program until Plaintiff admitted his guilt. Defendant Majerczyk also confirmed that Plaintiff's name had been removed from the SOT program's waiting list in 2007. Plaintiff then filed several grievances regarding the denial of his enrollment in the SOT program, the denial of his parole and the false information in his MDOC records.

On June 8, 2010, Plaintiff received a Parole Guidelines Scoresheet, which indicated that Plaintiff scored an average probability of parole. On June 16, 2010, Defendant Klienhardt interviewed Plaintiff for parole. Plaintiff told Defendant Klienhardt that he attempted to enlist in the SOT program but the MDOC denied Plaintiff's request because Plaintiff stated that he was innocent of the charges. Defendant Klienhardt said that Plaintiff would not be paroled until he admitted his guilt.

On September 2, 2010, Defendants Klienhardt and DeAngelo signed the notice of decision denying Plaintiff's parole, again noting that Plaintiff continued to deny his offenses. Plaintiff received a continuance for 18 months. Defendants Klienhardt and DeAngelo also prepared Plaintiff's Case Summary Report. Plaintiff alleges that Defendants Klienhardt and DeAngelo's Case Summary Report falsely provides that (1) Plaintiff touched the victim several times on her chest and

vagina over her clothing; (2) Plaintiff said that "[he] was falsely accused of actions to remove [his] kids from [his] home;" (3) psychological programming was recommended; and (4) there was a civil warrant for child neglect for Plaintiff. (Second Am. Compl., Page ID #212.) Klienhardt and DeAngelo recommended that Plaintiff comply with psychological screening and therapeutic programming.

Plaintiff claims that the requirement that he admit guilt violates his right to freedom of speech under the First Amendment, his due process rights under the Fourteenth Amendment and his right not to incriminate himself under the Fifth Amendment. Plaintiff further alleges that Defendants have not extended immunity to him for any admission that he may make during the SOT program. Plaintiff states that there were allegations of first-degree criminal sexual conduct at his trial. Plaintiff argues that any admissions in the SOT program could result in new charges of criminal sexual conduct, and, thus, violate his Fifth Amendment right against self-incrimination. Plaintiff cites Justice Sandra O'Connor's concurring opinion in *McKune v. Lile*, 536 U.S. 24 (2002) as support for his Fifth Amendment argument. Plaintiff also claims that Defendants' reliance on false documents to deny his parole violates the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment. Plaintiff finally argues that Defendants have engaged in a conspiracy to violate Plaintiff's constitutional rights.

For relief, Plaintiff seeks declaratory relief, together with an injunction eliminating the SOT program policy and directing Defendants to allow prisoners, who openly assert their innocence of the charges for which they were convicted, to participate in the SOT program. Plaintiff finally seeks compensatory and punitive damages.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A challenge to the fact or duration of confinement ordinarily should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 484, 494 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). The Supreme Court has held that a state prisoner cannot make a cognizable claim under § 1983 for an alleged unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . ." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (citation omitted); *see also Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997). However, in *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005), the Supreme Court clarified the *Heck* rule, finding "that a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – if success in that action would necessarily demonstrate the invalidity of confinement or its duration.") (emphasis in original). Plaintiff does not seek release from prison; rather, he requests admission to the SOT program. As a consequence, under *Wilkinson*, his success in the action would not necessarily demonstrate the invalidity of his continued confinement, so his action does not appear to be *Heck*-barred.

Nevertheless, assuming that Plaintiff's action is cognizable under § 1983, it fails to state a claim as set forth herein.

### A. Procedural Due Process

Plaintiff claims that Defendants violated his due process rights by relying on false information in denying his parole and by creating a policy that prevents him from being considered for parole unless he falsely admits his guilt. To establish a procedural due process violation, a plaintiff must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006). Plaintiff fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-165 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. Subsequent to its 1994 decision, the Sixth Circuit has recognized the continuing validity of *Sweeton* and has continued to find that

Michigan's parole scheme creates no liberty interest in being released on parole. *See, e.g. Foster v. Booker*, 595 F.3d 353, 368 (6th Cir. 2010); *Ward v. Stegall*, No. 03-1804, 2004 WL 614581, at *1 (6th Cir. Mar. 24, 2004). Also, in unpublished decisions, the Sixth Circuit has held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole. *See Fifer v. Mich. Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995). In addition, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Until Plaintiff has served his fifteen-year maximum sentence, he has no reasonable expectation of liberty. In the absence of a liberty interest, even an allegation of arbitrary or capricious denial of release on parole states no federal claim. *See Haynes v Hudson*, No. 89-2006, 1990 WL 41025, at *1 (6th Cir. Apr. 10, 1990). The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. The Michigan Parole Board's failure or refusal to consider Plaintiff for parole, therefore, implicates no federal right. In the absence of a liberty interest, Plaintiff fails to state a claim for a violation of his procedural due process rights.

Plaintiff's related allegation that Defendants relied on false information to deny his parole also fails to state a claim. Because Plaintiff has no liberty interest in being paroled, he cannot show that the false information was relied upon to a constitutionally-significant degree. *See Caldwell v. McNutt*, No. 04-2335, 2006 WL 45275, at *1 (6th Cir. Jan. 10, 2006) ("[E]ven if the Parole Board relied on inaccurate information to deny Caldwell parole, it did not violate any liberty

interest protected by the United States Constitution."); *Echlin v. Boland*, No. 03-2309, 2004 WL 2203550, at *2 (6th Cir. Sept. 17, 2004) (prisoner could not bring a § 1983 action to challenge the information considered by the parole board because he has no liberty interest in parole); *see also Draughn v. Green*, No. 97-1263, 1999 WL 164915, at *2 (6th Cir. Mar. 12, 1999) (in order for the Due Process Clause to be implicated, false information in a prisoner's file must be relied on to a constitutionally significant degree); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996) (no constitutional violation by having false information placed in a prison file); *Carson v. Little*, No. 88-1505, 1989 WL 40171, at *1 (6th Cir. Apr. 18, 1989) (inaccurate information in an inmate's file does not amount to a constitutional violation). Therefore, Plaintiff fails to state a claim for a violation of his due process rights arising from the denial of his parole.

Moreover, to the extent that Plaintiff intends to allege that his due process rights were violated when he was denied admission into the SOT program, he also fails to state a claim. Plaintiff does not have a federally cognizable liberty interest in participating in any rehabilitative program. Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs. *See, e.g., Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989) (no constitutional right to rehabilitation); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Antonelli v. Sheahan*, 81 F.3d

1422, 1431 (7th Cir. 1996) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services). Because Plaintiff has no liberty interest in the rehabilitative program, his due process rights were not violated by Defendants' refusal to admit him into the SOT program.

### B. Equal Protection Clause

Plaintiff claims that Defendants violated his equal protection rights by relying on false documents to deny his parole . The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir. 1998).

Because neither a fundamental right nor a suspect class is at issue, the rational basis review standard applies. *Club Italia Soccer & Sports Org., Inc.,* 470 F.3d at 298. "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally

treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Here, Plaintiff alleges that he was treated differently because Defendants relied on false information to deny his parole. Plaintiff fails, however, to identify any prisoner who was similarly situated to Plaintiff in all relevant respects but obtained a favorable result with the parole board. *See Tri-Health, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 791 (6th Cir. 2005) (discussing requirement that similarly situated inquiry requires disproving all conceivable bases for distinguishing comparables). In addition, Plaintiff fails even to argue that the difference in treatment was intentional.

Moreover, the Supreme Court recently has recognized that rational basis scrutiny is not properly applied to certain discretionary decisions, such as employment decisions:

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 603 (2008). While the Supreme Court's holding in *Engquist* was limited to the employment context, the Court's broad language is equally relevant to a variety of prison decisions, including this one. Parole considerations are the type of discretionary decisions discussed in *Engquist* that typically are "subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify." *Id.* at 604. Discretion to grant parole is squarely lodged with the Parole Board. *See Sweeton*, 27 F.3d at 1164-165 (noting the broad authority of the Michigan Parole Board to make discretionary decisions). Applying

*Engquist*, even an arbitrary parole decision would not violate Plaintiff's equal protection rights. *Id.*, 553 U.S. at 603; *see also Franks v. Rubitschun*, No. 5:06-cv-164, 2010 WL 1424253, at *8 (W.D. Mich. Mar. 31, 2010) (applying *Engquist* to parole decision).

For all these reasons, Plaintiff fails to state an equal protection claim.

### C. Fifth Amendment

Plaintiff next alleges that Defendants violated his Fifth Amendment right not to incriminate himself and continues to violate his Fifth Amendment right when he is denied parole as a result of his refusal to admit guilt for entrance in the SOT program and for the parole board. This assertion is without merit.

It is well-settled that the Fifth Amendment right against self-incrimination is not implicated by the alleged pressure on a prisoner to admit, in order to improve his chances for parole, that he committed the crime for which he is incarcerated. *See Hawkins v. Morse,* No. 98-2062, 1999 WL 1023780, at *2 (6th Cir. Nov. 4, 1999) (citing *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 285-88 (1998)). *See also Rice v. Mich. Parole Bd.*, No. 1:05-cv-549, 2005 WL 2297463, at *3-4 (W.D. Mich. Sept. 21, 2005) (Fifth Amendment extends only to proceedings in which answers might incriminate the individual in *future* criminal proceedings; therefore refusal to admit to crimes of which prisoner had already been convicted did not implicate Fifth Amendment) (emphasis in original). Therefore, the parole board's consideration of Plaintiff's denial of guilt for the crimes of which he already has been convicted does not violate his Fifth Amendment rights.

Plaintiff also argues that Defendants will violate Plaintiff's Fifth Amendment rights by requiring that Plaintiff admit to other crimes during the SOT program. Plaintiff claims that he has not been granted immunity for charges based on other sexual conduct for which he has not been

convicted.  Plaintiff contends that there were allegations at his trial that he was engaged in first-degree criminal sexual conduct.  Plaintiff claims that any admissions during the SOT program could result in new charges against him.  Plaintiff, however, does not allege that he was being denied admission to the SOT program because he would not admit that he was guilty of additional offenses. Instead, his complaint expressly stated that "Defendants refuse to allow [Plaintiff] to enlist in sexual offender therapy ("SOT") *because of his absolute denial of any involvement in the charge[s] of which he was convicted.*"  (Second Am. Compl., Page ID #201 (emphasis added).)  Plaintiff also does not allege that Defendants routinely use SOT program disclosures to bring further criminal charges against SOT program participants.  Indeed, he alleges no facts supporting his argument other than his claim that such an occurrence could arise.

Furthermore, other Circuits have routinely held that sex offender treatment programs that require inmates to divulge their sexual histories (not merely admit to their offense conduct) do not violate the Fifth Amendment, even though the failure to participate in the programs implicates the likelihood of parole.  *See Thorpe v. Grillo*, 80 F. App'x 215, 217, 219 (3d Cir. 2003) (relying on *Chavez v. Martinez*, 538 U.S. 760, 769 (2003) (clarifying that "mere coercion does not violate the text of the Self-Incrimination Clause absent use of the compelled statements in a criminal case against the witness")); *Ainsworth v. Stanley*, 317 F.3d 1, 5 (1st Cir. 2002); *Searcy v. Simmons*, 299 F.3d 1220, 1226 (10th Cir. 2002).

Plaintiff cites Justice Sandra O'Connor's concurring opinion in *McKune v. Lile*, 536 U.S. 24 (2002) as support for his Fifth Amendment claim.  A plurality of Supreme Court justices held in *McKune* that, requiring an inmate to disclose his past sexual activities and to admit responsibility for a sex crime did not amount to unconstitutional compulsion where the failure to

disclose and to admit responsibility could result in a transfer to a less desirable housing unit and the loss of privileges. *See McKune*, 536 U.S. at 35. In her concurring opinion, Justice Sandra Day O'Connor stated that certain penalties, such as longer incarceration and execution, were "far greater than those [the Supreme Court has] already held to constitute unconstitutional compulsion" and that "the imposition of such outcomes as a penalty for refusing to incriminate oneself would surely implicate a 'liberty interest.'" *Id.* at 52. Justice Sandra O'Connor's concurring opinion in *McKune*, 536 U.S. 24, however, is unpersuasive. It is not the holding of the *McKune* case. A plurality of Supreme Court justices in *McKune* did not extend the holding to carve out certain penalties, such as longer incarceration and execution, to constitute unconstitutional compulsion. Further, Plaintiff has no reasonable expectation of liberty because he has not yet served his fifteen-year maximum sentence. Accordingly, the potential disclosure of other criminal sexual conduct offenses during the SOT program do not violate Plaintiff's Fifth Amendment rights.

### D.     First Amendment

Plaintiff also claims that his First Amendment rights have been violated because he was required to say that he is guilty of the offense for which he was convicted in order to improve his chance of parole. In *Hawkins*, 1999 WL 1023780, at *2, the Sixth Circuit affirmed the dismissal of a prisoner's similar First Amendment claim, stating that "the parole board's consideration of a prisoner's willingness to accept responsibility for committing a crime does not force [the prisoner] to admit his guilt. [The prisoner] is free to maintain his innocence." *Id.*; *see also Hawkins v. Abramajtys*, No. 99-1995, 2000 WL 1434695, at *1 (6th Cir. Sept. 19, 2000) (reaffirming the decision in *Hawkins*, 1999 WL 1023780, at *2). The Third Circuit recently addressed the issue in more detail. In *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010), the court acknowledged that

the First Amendment protects both the right to speak freely and the right not to speak at all. *Id.* (citing *Wooley v. Maynard*, 430 U.S. 705, 714 (1977)). The Amendment ordinarily prevents the state from "inquir[ing] about a man's views or associations solely for the purpose of withholding a right or benefit because of what he believes." *Newman*, 617 F.3d at 781 (quoting *Baird v State Bar of Ariz.*, 401 U.S. 1, 7 (1971). As the Supreme Court repeatedly has recognized, however, incarceration necessarily "imposes restrictions on a prisoner's rights." *Id.* (quoting *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129 (1977)). A prisoner retains only those First Amendment rights that are not "inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). The *Newman* court held that the prisoner failed to make the necessary showing under *Turner*. *See Newman*, 617 F.3d at 781.

Here, as in *Newman*, Plaintiff fails to allege that the requirement that he admit guilt serves no legitimate penological purpose or is unrelated to rehabilitation. Moreover, the Supreme Court squarely has recognized that "'States . . . have a vital interest in rehabilitating convicted sex offenders' and 'acceptance of responsibility for past offenses' is a 'critical first step' in a prison's rehabilitation program for such offenders.'" *Id.* (quoting *McKune*, 536 U.S. at 33.) Plaintiff claims that his admission would be false and it therefore is not relevant to his rehabilitation. (Second Am. Compl., Page ID #213.) However, because Plaintiff entered a plea and was convicted of the offense, the state has no further burden of proving his guilt in relation to his eligibility for rehabilitation

programs and parole. *Newman,* 617 F.3d at 781. As a consequence, Plaintiff fails to state a First Amendment claim.

### E.     Conspiracy

Plaintiff argues that Defendants engaged in a conspiracy to violate his constitutional rights. To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102,106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996). A plaintiff's allegations must show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators to commit an act depriving plaintiff of a federal right. *Lepley v. Dresser*, 681 F.Supp. 418, 422 (W.D. Mich. 1988). "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996). A simple allegation that defendants conspired to cover up wrongful actions is too conclusory and too speculative to state a claim of conspiracy. *Birrell v. State of Mich.*, No. 94-2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995). Plaintiff's allegations of conspiracy are vague, conclusory and speculative. Therefore, he fails to state a claim for conspiracy.

### F. Pending Motions

Plaintiff has filed the following motions: a motion for preliminary injunction (docket #2), a motion for order to allow service of summons and complaint upon prison officials under the prisoner mailbox rule (docket #7), a motion to serve the complaint (docket #10) and a motion to file a second amended complaint (docket #13). Because the Court finds that Plaintiff's action must be dismissed for failure to state a claim, Plaintiff's motion for preliminary injunction, motion for order to allow service of summons and complaint upon prison officials under the prisoner mailbox rule, and motion to serve the complaint will be denied as moot. As to Plaintiff's motion to file a second amended complaint, the Court will grant Plaintiff's motion for the reasons provided in footnote 1.

### **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915A and 42 U.S. C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment and Order consistent with this Opinion will be entered.


Dated: January 10, 2011          /s/ Janet T. Neff
                                 Janet T. Neff
                                 United States District Judge